UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KARGO CAPITAL INC., KARGO
HOLDINGS, LLC, and KARGO
GLOBAL LLC,

                Plaintiffs,

        -v-                            1:25-CV-00308 (AJB/PJE)

BOAZ COHEN, DAVID DONNELLY, and
DANIEL KING,

                Defendants.
_____

**Hon. Anthony Brindisi, U.S. District Judge:**

## DECISION & ORDER

**I.    INTRODUCTION**

Plaintiffs Kargo Capital Inc., Kargo Holdings, LLC, and Kargo Global LLC (collectively "Kargo") have sued defendants Boaz Cohen, David Donnelly, and Daniel King ("defendants") for breach of contract and declaratory judgment. Before the Court is defendants' Motion to Dismiss. For the reasons below, defendants' motion is **GRANTED**.

**II.    BACKGROUND**

Kargo owns and operates Kargo Media Ireland Limited, formerly known as "Betapond." Compl., Dkt. No. 1 ¶ 5. Defendants are former directors and shareholders of Betapond. *Id.* ¶¶ 6–9. In 2021, defendants sold their shares to Kargo pursuant to a Stock Purchase Agreement ("SPA"). *Id.* As part of the sale, pursuant to the SPA, Kargo issued defendants Contingent Notes on October 15, 2021. *Id.* ¶¶ 16–18; *see* Contingent Notes, Dkt. No. 1-3.

Cohen's Note was for $224,446.00; Donnelly's, $112,223.00; and King's, $224,446.00. *See* Dkt. No. 1-3 at 2, 12, 22. The Contingent Notes required Kargo to pay off any outstanding balance within two years of each Note's execution (the "Maturity Date"). *See* Contingent Notes § 2(a), Dkt. No. 1-3 at 3, 13, 23, 33.

In connection with each Note, the parties executed a Subordination Agreement. *See* Dkt. No. 1 ¶ 19. Under each Subordination Agreement, defendants acknowledged that Kargo Global and BankUnited, N.A. (the "Senior Lender") are party to a Credit and Guaranty Agreement dated October 31, 2019, and subsequently amended (the "Senior Credit Agreement"). *Id.* ¶ 21.

Defendants' Contingent Notes matured on October 15, 2023. *Id.* ¶ 31. Kargo was unable to pay the Contingent Notes in cash. *Id.* According to Kargo, paying in cash would have caused Kargo to default under its Senior Credit Agreement, which would have, in turn, violated the parties' Subordination Agreements. *Id.* Instead, on November 1, 2023, Kargo offered to satisfy defendants' claims by allocating them equivalent shares in Kargo Holdings. *Id.* ¶ 32.

Defendants rejected the offer. *Id.* ¶ 33. About a year later, on October 2, 2024, defendants began arbitration proceedings in Dublin, Ireland, seeking cash payment of the Contingent Notes in full, plus interest, costs, and expenses. *Id.* ¶ 35. Six months later, Kargo filed this suit.

### III.   STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, a complaint must provide enough facts to state a claim to relief that is plausible on its face. *Kumpf v. New York State United Tchrs.*, 642 F. Supp. 3d 294, 304 (N.D.N.Y. 2022) (Sannes, C.J.) (citing *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013)). "A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's

favor." *Lancaster v. Am. Textile Co., Inc.*, 719 F. Supp. 3d 204, 214 (N.D.N.Y. 2024) (Sannes, C.J.) (citing *EEOC v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 253 (2d Cir. 2014)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Smith v. Adidas Am., Inc.*, 691 F. Supp. 3d 564, 572–73 (N.D.N.Y. 2023) (Sannes, C.J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## IV. DISCUSSION

"This action arises as a dispute relating to the Subordination Agreements, which govern the payment of certain Contingent Notes issued by Kargo to defendants in connection with Kargo's acquisition of Betapond." Dkt. No. 1 ¶ 14. The dispute, as presented by plaintiff, is "the payment of certain Contingent Notes issued by Kargo to defendants[.]" *Id.*

Consequently, Kargo raises two claims in its Complaint. The first is for "[b]reach of Subordination Agreements." *See id.* ¶¶ 42–47.[1] The second seeks declaratory judgment. *See id.* ¶¶ 48–54.

### A. Breach of Contract

"In a breach of contract case, a plaintiff must plead (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Markatos v. Citibank, N.A.*, 760 F. Supp. 3d 70, 84 (S.D.N.Y. 2024) (quoting *Aubrey v. New Sch.*, 624 F. Supp. 3d 403, 413 (S.D.N.Y. 2022)).

Kargo argues that the procedures for resolution of the parties' dispute—the payment of Contingent Notes—is dictated by the Subordination Agreement. *See* Dkt. No. 1 at 4–5, 7 (citing

---

[1] "[G]iven that both parties cite to New York law in their briefing, the Court will apply New York law to this issue." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 801 F. Supp. 3d 330, 475 n.182 (S.D.N.Y. 2025); *see, e.g.*, Defs.' Mot. to Dismiss, Dkt. No. 11-1 ("Under New York law, courts must construe contracts 'in accord with the parties' intent.'") (quoting *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002)).

Subordination Agreement ¶¶ 2.1, 2.3, 2.4, 10, 13, 14, 16).  Under Paragraph 16 of the Subordination Agreement, the parties "consent to the jurisdiction of any state or federal court located within . . . New York and irrevocably agree that all actions or proceeding arising out of or relating to [the Subordination] [A]greement shall be litigated in such courts."  *See, e.g.*, Subordination Agreement, Dkt. No. 1-2 at 12.[2]  Defendants have demanded cash payments of their Contingent Notes.  *See* Dkt. No. 1 ¶¶ 35, 45.  Cash payments will, according to Kargo, violate the Subordination Agreement; therefore, defendants' demand is a dispute "arising out of or relating to" the Subordination Agreement.  *Id.* ¶ 44.  Thus, in Kargo's view, any remedy must be sought via "litigat[ion] in [New York] courts."  *Id.* ¶ 53.  Defendants have, instead, sought redress via arbitration in Dublin, Ireland.  *Id.* ¶ 51.  In doing so, Kargo claims, defendants have breached the Subordination Agreements.  *Id.*

Naturally, defendants disagree.  The parties are all signatories to the SPA.  *See id.* ¶¶ 6–9. Paragraph 14 of the Contingent Notes provide that "Sections 8.2, 8.9, 8.10 and 8.11 of the SPA are incorporated herein by reference[.]"  *See, e.g.*, Dkt. No. 1-3 at 18.

Section 8.9—the SPA's choice of law clause—states, "This Agreement shall in all respects (including the formation thereof and performance thereunder) be governed by and construed in accordance with the laws of the Designated Jurisdiction."  Stock Purchase Agreement, Dkt. No. 1-1 at 66; *see id.* at 73 (defining "Designated Jurisdiction" as "Ireland.").

Section 8.10—the SPA's arbitration clause—adds that "any dispute which is not expressly assigned under this Agreement and/or the Transaction Documents to be otherwise resolved shall

---

[2] The pagination cited corresponds to the pagination assigned to each record document by CM/ECF.

4

be resolved by means of arbitration carried out in Dublin, Ireland under the law of Ireland[.]" *Id.* at 66.[3]

Defendants argue that "the Subordination Agreement is a limited instrument addressing only the relative priority of payments among creditors." Defs.' Mot. to Dismiss, Dkt. No. 11-1 at 22.  Here, "[t]he relevant claims do not concern the order in which . . . creditors are to be paid." *Id.* at 21.  Rather, the claims "center on [d]efendants' entitlement to payment under the Contingent Notes." *Id.*  Therefore, the claims "arise directly from the parties' rights and obligations under the SPA and Contingent Notes, and . . . fall squarely within the scope of the SPA's mandatory arbitration provision." *Id.* (citing SPA § 8.11).

Kargo concedes that "the SPA contains an arbitration provision." Pl.'s Resp., Dkt. No. 13 at 8.  But according to Kargo, "that clause only provides for arbitration of disputes that are '*not expressly assigned under [the SPA] and/or the Transaction Documents to be otherwise resolved*.'" *Id.* at 4 (quoting SPA ¶ 8.10(a)) (emphasis in original).

These "Transaction Documents," Kargo declares, "include [the] Subordination Agreements[.]" *Id.* (citing Subordination Agreement, Dkt. No. 1-2).  "SPA ¶ 9.1 defines 'Transaction Documents' to include the SPA itself, its Exhibits, the Contingent Notes, 'and all other agreements and instruments executed and delivered by any Party in connection herewith.'" *See id.* at 6; *id.* at 9 n.9.

Kargo maintains that "[t]he Subordination Agreements, which are defined in SPA ¶ 9.1, are clearly included in [the SPA's] definition because SPA ¶ 2.2(b)(ix) specifically required delivery of the Subordination Agreements at closing." *Id.* at 6; *id.* n.5 ("SPA ¶ 9.1 defines

---

[3] Section 8.2 dictates the way notice is to be provided under that Agreement.  Dkt. No. 1-1 at 63–64.  Its contents are not relevant to the matter at hand.

5

'Subordination Agreement' as: 'the subordination agreement(s) to be entered into between Kargo Global LLC and BankUnited, N.A. and the Sellers on the date hereof.'").

Therefore, "the Transaction Documents—specifically the Subordination Agreement—make unequivocally clear that the dispute involved in this litigation is *not* to be arbitrated[] but is required to be litigated in this Court." *Id.* at 8; *id.* n.8 ("Notably, defendants['] . . . entire contention is that the SPA's dispute resolution provision overrides that in the Subordination Agreement."). Defendants have, thus, breached the Subordination Agreement.

Ultimately, Kargo argues, "[t]he only contested issue in this case . . . is whether 'Kargo was unable to pay the Contingent Notes in cash *without causing a default* under its senior credit agreement[,] and thereby *violating the . . . Subordination Agreements*.'" *Id.* at 4 (quoting Dkt. No. 1 ¶ 31) (emphasis in original).

That is not a "contested issue" here. The Complaint states that "when defendants' Contingent Notes matured on October 15, 2023, Kargo was unable to pay the Contingent Notes in cash without causing a default under its senior credit agreement with BankUnited, N.A." Dkt. No. 1 ¶ 31. Accordingly, Kargo "correctly declined to satisfy the Contingent Notes in cash upon maturity[,] because doing so would have caused [it] to breach the Subordination Agreements and its agreements with [BankUnited]." *Id.* ¶ 52.

Under the Subordination Agreement, Kargo is permitted to make "distribution[s]" (including cash payments)[4] to defendants, "so long as no Senior Default exists, and such payment would not cause a Senior Default." *See, e.g.*, Dkt. No. 1-2 at 6. "Senior Default," as defined by the Subordination Agreement, means "any 'Default' or 'Event of Default' under the Senior Debt Documents." *Id.* at 32. Those "Senior Debt Documents" are the "Senior Credit

---

[4] Subordination Agreement, Dkt. No. 1-2 at 30 (including "any payment . . . by any Person of cash" in definition of "Distribution").

Agreement and all other agreements, documents and instruments executed from time to time in connection therewith[.]" *Id.* at 3.

But whether Kargo was right in refusing to pay defendants on October 15, 2023, has no bearing on its "breach" claim—the Complaint's sole substantive cause of action. Kargo maintains that "[b]y commencing the Arbitration in Ireland, a forum over 3,000 miles from Albany County, seeking an order requiring Kargo to make cash payments that would violate the Subordination Agreements, defendants have breached the Subordination Agreements." Dkt. No. 1 ¶ 45.

The Subordination Agreements restrict Kargo from making cash payments if a "Senior Default exists" or "such payment would . . . cause a Senior Default[.]" Dkt. No. 1-2 at 6, ¶ 2.3. Yet the Complaint alleges only that, on October 15, 2023, Kargo could not pay defendants in cash without causing a Senior Default. *See* Dkt. 1 ¶ 31.

But that is irrelevant to the breach-of-contract claim that Kargo has actually brought. Defendants did not initiate arbitration until late 2024. *Id.* ¶ 35. Yet it is the commencement of those proceedings undergirding Kargo's breach claim. *Id.*

Kargo insists that defendants, in 2024, should have brought their claims "in a court within . . . Albany, as required under the Subordination Agreements[.]" *Id.* But again, as relevant here, the Subordination Agreements only prohibit Kargo from paying defendants if (i) a "Senior Default exists" or (ii) "such payment would . . . cause a Senior Default." Subordination Agreement, Dkt. No. 1-2 at 6 ¶ 2.3. Kargo claims that by "seeking an order . . . that would violate the Subordination Agreements, defendants have breached the Subordination Agreements." Dkt. 1 ¶ 45.

7

Absent more non-conclusory allegations, Kargo's assertions are merely conjecture about a future breach by defendants. That is insufficient to plausibly allege a breach of contract. *See, e.g.*, *Advanced Glob. Tech., LLC v. XM Satellite Radio, Inc.*, 2007 WL 3196208, at *3 (S.D.N.Y. Oct. 29, 2007) ("Regarding the allegations that [defendant] may possibly breach the Agreement in the future, such claims are nothing more than unripe speculation."); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"); *Cf. MThree Corp. Consulting Ltd. v. Wascak*, 2022 WL 15524842, at *4 (S.D.N.Y. Oct. 27, 2022) ("Plaintiff further argues that 'Defendants *inevitably will* use Confidential and proprietary information . . . to wrongfully compete with the Company[,]' and that Defendants' intent to do so is 'demonstrated by their overt position that the agreements are unenforceable and steadfast refusal to confirm they will comply.' The Court will not entertain allegations of future breach supported by nothing more than Defendants' mere advancement of an argument that the contractual provisions are unenforceable.") (emphasis in original).

Alternatively, if Kargo means to assert that defendants are *currently* in breach of the Subordination Agreements because of some present circumstance, it has provided no factual basis for that claim. "By failing to allege facts that would constitute breach of the contractual terms, [p]laintiff has presented the Court with nothing more than 'conclusory allegations . . . masquerading as factual conclusions.'" *MThree Corp. Consulting*, 2022 WL 15524842, at *4 (citing *Katz v. Donna Karan Co. Store, L.L.C.*, 872 F.3d 114, 118 (2d Cir. 2017)); *see id.* ("[A]llegations that merely parrot the language of the contractual provisions alleged to be breached without providing supporting facts are not presumed true.") (quoting *Northwell Health, Inc. v. Lexington Ins. Co.*, 550 F. Supp. 3d 108, 115 (S.D.N.Y. 2021)).

"Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract." *Bodum Holding AG v. Starbucks Corp.*, 2020 WL 2731987, at *5 (S.D.N.Y. May 22, 2020) (quoting *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008)). Accordingly, the Court finds that Kargo has not plausibly alleged a breach of contract.

**B.     Declaratory Judgment**

Kargo's second "claim" seeks declaratory judgment under 28 U.S.C. § 2201. *See* Dkt. No. 1 ¶¶ 48–54. "However, the Declaratory Judgment Act 'does not create an independent cause of action.'" *Doe v. Colgate Univ.*, 2017 WL 4990629, at *25 (N.D.N.Y. Oct. 31, 2017), *aff'd*, 760 F. App'x 22 (2d Cir. 2019) (quoting *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012)). "Rather, '[i]ts operation is procedural only—to provide a form of relief previously unavailable.'" *Rand v. Travelers Indem. Co.*, 637 F. Supp. 3d 55, 72 (S.D.N.Y. 2022) (quoting *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993)). "Therefore, a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." *Lawson v. Xinis*, 2025 WL 2044268, at *3 (D. Conn. July 17, 2025) (quoting *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d at 731).

Because Kargo's breach claim has been dismissed, its request for a declaratory judgment must also be dismissed. *See, e.g.*, *Blue Angel Realty, Inc. v. United States*, 2022 WL 94599, at *14 (S.D.N.Y. Jan. 8, 2022) (collecting cases).

**V.     CONCLUSION**

Therefore, it is

**ORDERED** that

1. Defendants' motion (Dkt. No. 11) is **GRANTED**; and,

2. Plaintiffs' complaint is **DISMISSED WITHOUT PREJUDICE**.

The Clerk of Court is directed to terminate the pending motion, enter a judgment accordingly, and close the case.

**SO ORDERED.**

Dated: February 24, 2026
Utica, New York.

Anthony J. Brindisi
U.S. District Judge